IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

GOVERNMENT EMPLOYEES
INSURANCE COMPANY,

    Plaintiff,

    vs.

EDUARDO BITONIO,

    Defendant.

Civ. No. 15-00475 ACK-KJM

## ORDER GRANTING DEFENDANT AND COUNTERCLAIMANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

For the reasons set forth below, the Court GRANTS Defendant and Counterclaimant Eduardo Bitonio's Motion for Summary Judgment, ECF No. 20, and DENIES Plaintiff Government Employees Insurance Company's Motion for Summary Judgment, ECF No. 21.

## PROCEDURAL BACKGROUND

On November 12, 2015, Plaintiff Government Employees Insurance Company ("GEICO") filed a Complaint for Declaratory Judgment asking this Court to declare and adjudge that GEICO does not have a duty to pay underinsured motorist ("UIM") benefits or provide coverage to Defendant and Counterclaimant Eduardo Bitonio ("Bitonio") under the subject policy in relation to an accident involving Bitonio that occurred on December 18, 2013.  Compl. ¶ 6, ECF No. 1.  Bitonio filed a Counterclaim for

Declaratory relief on December 23, 2015, asking the Court for a declaration that GEICO is obligated to provide him with $100,000 in UIM coverage.  Counterclaim ¶ 21, ECF No. 10-1.

On May 31, 2016, Bitonio filed a Motion for Summary Judgment against GEICO supported by a Concise Statement of Facts along with declarations and exhibits.  ECF Nos. 20, 26.  On May 31, 2016, GEICO filed its Motion for Summary Judgment against Bitonio.  ECF No. 21.  GEICO's motion was supported by a Concise Statement of Facts along with declarations and exhibits.  ECF Nos. 22-24.  Bitonio filed his Memorandum in Opposition on August 8, 2016, supported by a Concise Statement of Facts in Support of His Memorandum in Opposition (Def.'s CSF in Opp.).[1]

---

[1] In Bitonio's Concise Statement of Facts in Opposition, he does not dispute most of GEICO's Concise Statement of Facts "except to the extent that the residence is characterized as an apartment and the living spaces are characterized as apartment units, which are matters in dispute."  Def.'s CSF in Opp., at 2. Bitonio disputed three paragraphs of GEICO's Concise Statement of Facts stating that "they contain inaccurate characterizations of the residence and living spaces" and sought to "incorporate[] by reference the facts set forth in" his Concise Statement of Facts from his Motion for Summary Judgment.  Id. at 2-3.  GEICO argues that Bitonio failed to follow the Local Rules by not supporting his Concise Statement of Facts in Opposition with evidence.  GEICO Reply, at 2-3, ECF No. 31.  On this basis, GEICO argues that its Concise Statement of Facts in Support of its Motion for Summary Judgment should be deemed admitted pursuant to Local Rule 56.1.  Id. at 3.

    The Court deems GEICO's facts admitted to the extent they are not controverted by the material facts as set forth by Bitonio in his moving papers.  Cf. Television Events & Mktg., Inc. v. AMCON Distrib., Co., 484 F. Supp. 2d 1124, 1128 (D. Haw. 2006) (noting that although plaintiff's opposition does "not
(continued . . . )

ECF No. 28, 29.  GEICO filed its Memorandum in Opposition, supported by a Concise Statement of Facts in Opposition on August 8, 2016.  ECF Nos. 27, 30.  The parties filed their replies on August 15, 2016.  ECF Nos. 31, 32.

The Court held a hearing on the motions on Monday, August 29, 2016.

## **FACTUAL BACKGROUND**

### I.   **The Accident and Bitonio's Living Arrangements**

On or around December 18, 2013, Bitonio was involved in a car accident on Kapiolani Boulevard in Honolulu, Hawaii. Cruz Decl., Ex. 7, at 1, ECF No. 23-1; Defendant and Counterclaimant's Concise Statement of Facts ("Def.'s CSF") ¶ 1. Bitonio was injured in the accident.  Cruz Decl., Ex. 7, at 6, 8; Def.'s CSF ¶ 2.

At the time of the accident, Bitonio lived at 1203 Peterson Lane.  Cruz Decl., Ex. 8 (Bitonio Examination Under Oath "Bitonio EUO"), at 11, ECF No. 23-2; Lydia Cabico Decl. ¶ 6, ECF No. 20-4.  Lydia Cabico owns 1203 Peterson Lane, and she and her late husband built a single family home there ("the

---

( . . . continued)
specifically accept or deny the material facts set forth by the Defendants," some of plaintiff's material facts are controverted by plaintiff's own set of material facts and thus the "Court does not consider Defendants' entire statement of facts to be admitted").  The Court addresses the material facts at issue throughout its Order.

Home"). Lydia Cabico Decl. ¶¶ 2-3. Cabico and her husband expanded and modified the Home over the years to accommodate their extended family members, some of whom emigrated to Hawaii from the Philippines. Id. ¶ 4. The Home is listed in the City and County of Honolulu Real Property Assessment Division public records as 2,963 square feet with eight bedrooms, three full bathrooms, and one half bathroom. Def.'s Mot. for Summary Judgment, Ex. B, ECF No. 20-7. The property class is listed as "RESIDENTIAL." Id.

Bitonio rents a unit on the first floor of the Home from Cabico, who is his aunt, but there is no formal rental agreement or a written lease. Bitonio EUO, at 11-13; Montero Decl. ¶ 11, ECF No. 22; Lydia Cabico Decl. ¶ 7. There are two other units on the first floor of the Home. Bitonio EUO, at 13; Montero Decl. ¶¶ 5-7; Cruz Decl., Ex. 9 (Akana Examination Under Oath "Akana EUO"), at 14, ECF No. 23-3. Bitonio's unit is separated by a common hallway from the two other units. Montero Decl. ¶ 7, Exs. 1-6; Bitonio EUO, at 22; Akana EUO, at 14-15. One of the other units is rented by Maria Montero and the other by Leroy Akana. Montero Decl. ¶ 7, Akana EUO, at 15; Lydia Cabico Decl. ¶ 7. Bitonio, Montero, and Akana are related to Cabico. Montero Decl. ¶ 10. Cabico is Montero's grandmother's brother's wife. Montero Decl. ¶ 11. Cabico and her family live on the second floor of the Home, which is accessed via an

exterior staircase.  Montero Decl. ¶ 9; Bitonio EUO, at 12; Akana EUO, at 15.

There is one mailbox on the property and associated with the Home, but members of each unit only pick up their own mail.  Montero Decl. ¶ 15; Akana EUO, at 18; Ruben Cabico Decl. ¶ 10, ECF No. 20-3.  The residents of the Home share a clothes line, clothes washing area, a carport, water heater, and a driveway.  Montero Decl. ¶ 16; Akana EUO, at 16; Ruben Cabico Decl. ¶¶ 9-10.  The carport is used as storage space and as a gathering place for family celebrations.  Ruben Cabico Decl. ¶ 11.  However, Montero does not "socialize" with Bitonio.  Montero Decl. ¶ 16.  Utilities are not submetered, but are included in the rent paid to Cabico.  Montero Decl. ¶ 8; Akana EUO, at 19; Ruben Cabico Decl. ¶ 9; Lydia Cabico Decl. ¶ 8.

Each of the downstairs units has its own front door that leads to the common hallway and there are no other doors that can be used to get in and out of each unit.  Montero Decl. ¶ 12, Ex. 6; Akana EUO, at 15, 17, 24; Bitonio EUO, at 13, 15-17.  The common hallway leads to the outside.  Montero Decl, Ex. 6.  Each of the units also has its own bedrooms, living room, kitchen, bathroom, and refrigerator.  Montero Decl. ¶ 7; Bitonio EUO, at 21; Akana EUO, at 16.  Bitonio and Montero do not have keys to each other's units and Akana does not have a key to

5

either Montero or Bitonio's unit.  Montero Decl. ¶¶ 13-14;
Bitonio EUO, at 17; Akana EUO, at 17-18.

Bitonio's unit is comprised of himself, his wife, his
son and daughter-in-law, and their two children.  Bitonio EUO,
18.  Montero's unit is comprised of Montero, her mother, and her
boyfriend.  Montero Decl. ¶ 5.  Bitonio does not access
Montero's unit freely, he has never slept in the unit, nor does
he have any personal belongings in her unit.  Bitonio EUO, at
19, 21.  The individuals in Bitonio and Montero's units do not
cook meals and do not share financial and household
responsibilities.  Montero Decl. ¶ 17; Bitonio EUO, at 22-23,
24, 28.

## II.  Bitonio's Tender to GEICO

On or around November 24, 2014, Bitonio submitted a
claim to GEICO for UIM coverage under Montero's GEICO policy.
Cruz Decl.  Cruz Decl., Ex. 11, ECF No. 23-5; Def.'s CSF ¶ 17.
In response, on December 1, 2014, GEICO sent a letter
acknowledging receipt of the claim and informing Bitonio that it
was investigating whether Bitonio qualified for UIM coverage.
Cruz Decl., Ex. 12, ECF No. 23-6; Def.'s CSF ¶ 18.  On September
18, 2015, GEICO sent a letter to Bitonio informing him that
pursuant to its investigation, including an examination under
oath of Bitonio, Bitonio did not qualify for coverage under
Montero's plan, as he was "not a member of the same household as

6

Ms. Montero." Cruz Decl., Ex. 14, ECF No. 23-8; Def.'s CSF ¶

20. GEICO informed Bitonio that if he disagreed, GEICO was

willing to obtain a court determination of the issue and file a

declaratory judgment action. Cruz Decl., Ex. 14.

### III. The GEICO Policy

GEICO issued Montero, as the Named Insured, a Hawaii

Family Automobile Insurance Policy under Policy No. 4197-30-12-

88, which was effective between December 8, 2013 and June 8,

2014 (the "Policy"). Pl.'s CSF ¶ 42, Ex. 1 to Compl.

("Policy"), at 2, ECF No. 1-1; Def.'s CSF ¶ 21.

Under Section V-Underinsured Motorist Coverage, the

Policy provides as follows:

> DEFINITIONS
> The definitions of terms in **Section I**, Liability
> Coverage apply to this coverage except for
> ***insured***. The definitions of **Section IV**,
> Uninsured Motorists Coverage, of ***your*** policy
> apply to this coverage except for the following
> special definition:
>
> ***Underinsured motor vehicle*** means a motor vehicle
> with respect to the ownership, maintenance or use
> of which the sum of the limits of liability under
> all bodily injury liability insurance coverage
> applicable at the time of loss to which
> coverage afforded by such policy or policies
> applies is less than the liability for damages
> imposed by law.
>
> . . . .
>
> **LOSSES WE PAY**
> Under the Underinsured Motorists coverage,
> subject to **EXCLUSIONS**, we will pay damages, not
> to exceed the applicable Underinsured Motorists

> policy limits, an ***insured*** is legally entitled to recover for ***bodily injury*** caused by accident from the owner or operator of an ***underinsured motor vehicle*** arising out of the ownership, maintenance or use of the ***underinsured motor vehicle***.  However, we will not pay until all the bodily injury liability claims have been resolved by judgments, awards or settlements.

Pl.'s CSF ¶ 43, Policy, at 22; Def.'s CSF ¶ 22.

Under SECTION IV-UNINSURED MOTORISTS COVERAGE, the Policy contains the following definition of "insured":

> **2. *Insured*** means:
> (a) The named insured shown in the declarations and his or her ***spouse***, if living with the insured in the same household;
> (b) ***Relatives*** living with the ***insured*** in the same household, related by blood, marriage, or adoption; and
> (c) Any other person while ***occupying*** an ***insured auto***;
>
> If there is more than one ***insured***, our limit of liability will not be increased.

Pl.'s CSF ¶ 44, Policy, at 19; Def.'s CSF ¶ 23.

Under SECTION I – LIABILITY COVERAGES, the Policy contains the following definition of "relative":

> **9. *Relative*** means a person living with ***you*** in the same household as the primary residence for both of ***you*** and ***your relative***, and who is related to ***you*** by blood, marriage, or adoption, or ***your*** reciprocal beneficiary or civil union partner living with ***you*** in the same household as the primary residence for ***you*** and ***your*** reciprocal beneficiary or civil union partner.

Pl.'s CSF ¶ 45, Policy, at 6; Def.'s CSF ¶ 24.

8

**STANDARD**

I. **Summary Judgment**

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex, 477 U.S. at 323). "When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] . . . come forward with specific facts showing that there is a *genuine issue for trial*."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (footnote omitted) (citations omitted).

"In insurance disputes, the insurer is only required to establish the absence of a genuine issue of material fact regarding the question of coverage pursuant to the plain language of the insurance policies and the consequent entitlement to the entry of judgment as a matter of law." Burlington Ins. Co. v. United Coatings Mfg. Co., 518 F. Supp. 2d 1241, 1246 (D. Haw. 2007) (citation omitted).

## II.  Diversity Jurisdiction

The court has diversity jurisdiction to hear this case pursuant to 28 U.S.C. § 1332.  GEICO is a Maryland Corporation and Bitonio is a resident of Hawaii.  Complaint ¶¶ 1-2; Counterclaim ¶ 1.  Federal courts sitting in diversity apply state substantive law and federal procedural law.  Hanna v. Plumer, 380 U.S. 460, 465 (1965); Erie v. Tompkins, 304 U.S. 64, 78 (1938).  A federal court is bound by the decisions of a state's highest court when interpreting state law.  Ariz. Elec. Power Coop., Inc. v. Berkeley, 59 F.3d 988, 991 (9th Cir. 1995). However, "[i]n the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance."  Id. (citation omitted).

## DISCUSSION

### I.  General Law Regarding Insurance Contracts

Under Hawaii law, courts look to the plain language of the insurance policy to determine the scope of the insurer's duties.  Dairy Rd. Partners v. Island Ins. Co., Ltd., 992 P.2d 93, 107 (Haw. 2000); see also Burlington Ins. Co. v. Oceanic Design & Const. Inc., 383 F.3d 940, 945 (9th Cir. 2004) ("In Hawaii, the terms of an insurance policy are to be interpreted according to their plain, ordinary, and accepted sense in common speech.").  "In the context of insurance coverage disputes, [the court] must look to the language of the insurance policies themselves to ascertain whether coverage exists, consistent with the insurer and insured's intent and expectations."  Hawaiian Ins. & Guar. Co. v. Fin. Sec. Ins. Co., 807 P.2d 1256, 1260 (1991).  "[B]ecause insurance policies are contracts of adhesion, they must [] be construed liberally in favor of the insured, [and] any ambiguities in their terms and conditions must be resolved against the insurer."  Estate of Doe v. Paul Revere Ins. Grp., 948 P.2d 1103, 1114-15 (Haw. 1997).  Insurance policies must also be "construed in accordance with the reasonable expectations of a layperson."  Hawaiian Isle Adventures, Inc. v. N. Am. Capacity Ins. Co., 623 F. Supp. 2d 1189, 1194 (D. Haw. 2009).

## II.  **Bitonio Qualifies as an "Insured" Under the Terms of the Policy**

Under the terms of the Policy, Bitonio is considered an "Insured" if he qualifies as a "[r]elative[] living with [Montero] in the same household, related by blood, marriage, or adoption."  Policy, at 19.  The parties do not dispute that Bitonio and Montero are related.  Thus, the dispositive issue is whether Bitonio and Montero live in the same household.

Bitonio argues that he lives in the same household as Montero pursuant to the Hawaii Supreme Court's decision in Park v. Government Employees Insurance Co., 974 P.2d 34 (1999).  The Court agrees.  The Hawaii Supreme Court, in Park, declined to adopt a multi-factor test to determine whether relatives living in the same residence were members of the same household.  The Park court concluded, "We therefore interpret the 'reasonable expectations of a layperson' in Hawaii as an expectation that family members, living in the same residence, are considered members of the same household for the purposes of insurance coverage."  974 P.2d at 38.  Under this holding, Bitonio and Montero, who live in the same residence, are members of the same household.

In Park, claimant Park sought UIM benefits on the basis that he was a "relative" of GEICO's insured, Matthew Findlay.  Id. at 35.  As here, the GEICO policy at issue defined

a "'relative' as 'a person [1] related to you who [2] resides in your household.'"   Id. at 36.   Park lived in a house with his parents, which they jointly owned.   Id. at 35.   Findlay was married to Park's niece and both Findlay and his wife were living at Park's home at the time of the accident at issue.   Id. at 35-36.   The court distinguished an earlier Hawaii Supreme Court case and a decision from this district court, in which "individuals who were not residing in the same residence" as the insured at the time of the accident claimed benefits as "'relatives' of the insured."   Id. at 37.   The court noted that "[n]either case presented the dispositive issue herein, *i.e.*, whether two persons residing in the same house, with no showing of physically separate living conditions, are residing in the same 'household.'"   Id.

In considering the issue, as noted above, the Park court declined to adopt a multi-factor test to determine whether Park and Findlay were members of the same "household," noting that consideration of factors such as "eating schedules and the delegation of household chores," as suggested by GEICO, would run contrary to the directive to "construe policy terms liberally, in favor of the insured, and in accord with the reasonable expectations of a layperson."   Id. at 38.   With respect to the reasonable expectations of a lay person, the court recognized the Hawaiian concept of ohana, noting:

13

> Hawaiian and Asian families of this state have
> long maintained strong ties among members of the
> same extended family group.  The Hawaiian word
> ['ohana] has been used to express this concept.
> It is not uncommon in [Hawai'i] to find several
> parent-children family units, with members of
> three and even four generations, living under one
> roof *as a single family.*

Id. (alterations in original) (quoting Leong v. Takasaki, 520

P.2d 758, 766 (1974)).  The Court "therefore interpret[ed] 'the

reasonable expectations of a layperson' in Hawaii as an

expectation that family members, living in the same residence,

are considered members of the same household for the purposes of

insurance coverage."   Id.

    Essentially, the Park court found that because Park

and Findlay lived in the same residence, they were members of

the same household and thus considered relatives under the GEICO

policy at issue.  Here, as in Park, Bitonio and Montero are

living in the same residence, i.e., 1203 Peterson Lane.  The

residence has only one address and there is no evidence that it

is zoned for apartment use.  The residence has one mailbox and

one driveway.  Moreover, as in Park, Bitonio and Montero both

lived at 1203 Peterson Lane at the time of the accident and

there is no evidence that they maintained a residence in any

other location.  In sum, because Bitonio and Montero live in the

same residence, as in Park, they "are considered members of the

same household for the purposes of insurance coverage." 974 P.2d at 38.

GEICO's attempts to distinguish Park are unpersuasive. GEICO points to the statement in Park, that the dispositive issue concerned "whether two persons residing in the same house, with no showing of physically separate living conditions, are residing in the same 'household.'" Id. at 37. GEICO claims that here, unlike in Park, Bitonio and Montero maintained "physically separate living conditions." GEICO Mem. in Support of Mot. for Summary Judgment ("GEICO MSJ"), at 22, ECF No. 21-1. In this respect, GEICO maintains that Bitonio and Montero live in separate apartment units with their own bedrooms, living rooms, kitchens, and bathrooms; do not purchase or share groceries; do not share or divide household chores; pay rent separately; and do not help each other financially. GEICO Reply, at 9, ECF No. 31. On this basis, GEICO argues that Park is distinguishable. However, as Bitonio claims, read in context, the reference to "physically separate living conditions" in Park refers to the fact that unlike in the other cases discussed by the Park court, there was no evidence that Park and Findlay lived in completely separate residences at the time of the accident. Indeed, as noted above, prior to the court's use of the phrase "physically separate living conditions," the court contrasted two other cases in which "two

individuals who were not residing in the same residence at the time of the accident, nevertheless claimed benefits as 'relatives' of the insured." Park, 974 P.2d at 37.

First, in Mun Quon Kok v. Pacific Insurance Co. Ltd., 462 P.2d 909, 910 (Haw. 1969), discussed by the Park court, the father of an insured claimed uninsured motorist benefits. The Hawaii Supreme Court affirmed a denial of coverage where the father and son lived at different addresses (one on Maunakea Street in Honolulu and the other at 1457 Pule Place, in Honolulu), although there was evidence that the son took meals to his father "at his rooming house" and received his father's mail and brought it to him. Id. at 911. The court held that because "there was no showing of temporary absence, no showing that appellant ever lived at named insured's residence, [and] no showing of support beyond two meals a day," the evidence was insufficient "to justify a finding that" the father and son were residents of the same household. Id. As noted by the Park court, however, Kok did not consider "the issue of what constitutes residing in the same household, when both the claimant and the insured are physically residing in the same residence." Park, 974 P.2d at 38 (emphasis added).

Similarly, in Tirona v. State Farm Mutual Automobile Insurance Co., 812 F. Supp. 1083, 1084, 1086 (D. Haw. 1993), the second case discussed by the Park court, this district court

16

considered whether a claimant husband could be covered by his wife's insurance where on the date of the accident the wife lived in Hawaii, while the husband lived in Las Vegas.  As noted by the court in Park, "in Tirona, the parties had maintained separate residences in different states for the majority of the thirteen years preceding the accident."  Park, 974 P.2d at 37. On this basis, the Tirona court held that the claimant and his wife lived in separate households.  Tirona, 812 F. Supp. at 1089.

Read in the context of the Park court's discussion of Kok and Tirona, the reference to "physically separate living conditions" in the Park opinion does not apply to the facts of this case, i.e., where the insured resides at the same physical address as the claimant.  Accordingly, GEICO's attempt to distinguish Park on this basis fails.

This conclusion is further supported by the Park court's decision that "a complex, multi-factor analysis" should not be applied to determine whether related individuals "who physically reside in the same residence, are members of the same 'household.'" 974 P.2d at 38.  Notably, although the Park court did not provide much discussion of the facts at issue, it appears that in Park, as in the instant case, GEICO attempted to argue that coverage should be denied based on the theory that separate households existed within the same physical address.

17

Indeed, in Park, GEICO argued that the court should consider,

inter alia, "separate control and furnishing of rooms within the

same house"; "separate family functions"; "separate purchases

and payments"; "separate household chores"; and "eating on

different schedules." Id. at 37.  The court, however, rejected

GEICO's argument and refused to consider such factors, noting

that doing so would be antithetical to the principles that

insurance policy terms should be considered liberally, in favor

of the insured, and according to the reasonable expectations of

a layperson.  Id. at 38.[2]  Here, as in Park, the Court is guided

by these same principles and similarly concludes that

consideration of the factors raised by GEICO, which attempt to

_____

[2] Notably, in Tirona, as discussed by the Park court, the court "recited twenty-two factors that have been utilized by various courts to determine whether parties physically residing together nevertheless maintained separate households." Park, 974 P.2d at 37 (citing Tirona, 812 F. Supp. at 1088 n.1).  These factors included "where personal belongings are stored"; "where the claimant socializes"; "flow of rent or other support between the parties"; "shared kitchen"; "shared appliances and utensils"; "freedom of access to all parts of household"; "shared bedrooms"; "shared living rooms"; "shared bathing facilities"; "shared entrances to household structures"; "physical separation of household structures"; "joint purchase of groceries and other necessities"; "shared payment of utilities"; "shared laundry facilities"; and "shared household chores." Tirona, 812 F. Supp. at 1088 n.1.  In determining that a multi-factor test should not be applied in Park, the court rejected the consideration of such factors where there is no showing that the claimant and insured resided in two completely distinct physical locations at the time of the accident.

demonstrate that Bitonio and Montero live in separate households, is inappropriate.

GEICO additionally argues that the concept of "ohana" as discussed in Park is not controlling because it does not apply to the facts here, i.e., "relatives living in separate apartments [and] separate living conditions," and because Bitonio and Montero were not living "as a single family."  GEICO Mem. in Opp., at 15, ECF No. 27; GEICO Reply, at 8.  However, the Court agrees with Bitonio that the thrust of the Park court's discussion of ohana is that in Hawaii, it is common for extended families to be living together under one roof.  See Bitonio Reply, at 8, ECF No. 32.  Indeed on this basis—and without considering whether Park and Findlay functioned within the residence as a single family or lived in physically distinct areas within the same residence—the Park court held that "'the reasonable expectations of a layperson' in Hawaii" include the expectation that "family members, living in the same residence, are considered members of the same household for purposes of insurance coverage."[3]  974 P.2d at 38.  This determination is

---

[3] Relatedly, in Park, the court discussed but did not adopt a definition of "household" described by this district court in Tirona as being based on "the existence of such domestic arrangements and circumstances as would create separate domestic establishments, each having its own head and separate management."  974 P.2d at 37 (quoting Tirona, 812 F. Supp. at 1077-88).  Because the Hawaii Supreme Court has not adopted such

(continued . . . )

equally applicable in the instant case.  The Court additionally agrees with Bitonio that finding otherwise based on the desire of family members to maintain their privacy by residing in separate living spaces within the same residence runs contrary to the spirit of Park and to the concept of ohana.

Finally, in its Reply, GEICO claims that in a case decided after Park, the Hawaii Supreme Court "found that the term 'residence' 'emphasizes membership in a group rather than an attachment to a building.'"  GEICO Reply, at 6 (quoting Mikelson v. United Servs. Auto. Ass'n, 111 P.3d 601, 611 (Haw. 2005)).  Relatedly, GEICO cites to this district court for the proposition that "under Hawaii law, 'what is paramount for resident relative purposes is a claimant's intent to be a member of the named insured's household.'"  Id. at 7 (quoting Yano v. Gov't Employees Ins. Co., No. CIV. 11-00745 SOM-BMK, 2012 WL 5037694, at *6 (D. Haw. Oct. 17, 2012), aff'd, 620 F. App'x 621 (9th Cir. 2015)).  GEICO claims that Bitonio's intent can be

---

( . . . continued)
a definition of "household," GEICO's reliance on cases from other jurisdictions is also misplaced.  See, e.g., Buxton v. Allstate Insurance Co., 434 So. 2d 605, 607, 610-12 (La. App. 1983) (finding the insured's sister did not live in the same household as the insured where the sister lived in a separate area of the house with a separate kitchen, bathroom, and living room, based on a definition of household similar to the one described in Tirona); Estate of Sturgill v. United Servs. Auto. Ass'n, 930 P.2d 945, 947 (1997) (holding claimant lived in separate household from insured where they "maintained separate domestic units under a common roof").

gleaned from his testimony that he lived in his apartment with his wife, son, his son's wife and two kids and that no one else lived in his apartment.  GEICO Reply, at 10-11 (citing Pl.'s CSF ¶ 20).  However, both Mikelson and Yano involved situations, unlike Park and the instant case, in which the claimant and the insured lived in physically distinct locations at the time of the accident.  In Mikelson, the Hawaii Supreme Court determined that based on the facts of the case, a college student remained a resident of his father's California household while attending college in Hawaii.  111 P.3d at 614.  In Yano, the claimant lived in an apartment in a completely different location from his insured father's home, and the court determined that there was no evidence that the claimant intended to return to live with his parents.  2012 WL 5037694, at *1-2, 8.  Thus, the court determined the claimant was not a resident of his parents' household.  Id. at *8.  Because these cases involved individuals living in physically distinct locations at the time of the accident at issue, they do nothing to disturb the Hawaii Supreme Court's decision in Park, and are likewise inapplicable in the instant case.[4]

---

[4] In its Opposition, GEICO discusses Hawaii's "Ohana" zoning laws to argue that any argument made by Bitonio that the laws bolster his claim for coverage is unavailing.  GEICO Mem. in Opp. at 18, ECF No. 27.  However, Bitonio states in his Reply that he does not rely on the zoning laws in support of his
(continued . . . )

In sum, the Court finds that under the facts of this case, Bitonio and Montero are considered members of the same household for purposes of insurance coverage.  Bitonio and Montero physically reside at 1203 Peterson Lane and there is no evidence that they resided at a different address at the time of the accident.  The Court is guided by Hawaii law, in which insurance policies must be construed liberally in favor of the insured and any ambiguity must be resolved against the insurer.  Estate of Doe, 948 P.2d at 1114-15.  Because there is no dispute that Bitonio and Montero are related, Bitonio and Montero are "relatives" as defined by the GEICO Policy.  Accordingly, Bitonio is entitled to UIM coverage as an insured under Montero's GEICO Policy.

---

( . . . continued)
Motion for Summary Judgment, and as noted by Bitonio, "[t]here is no evidence before the Court about the nature or extent of any ohana permits for 1203 Peterson Lane."  Bitonio Reply, at 8.  Thus, the Court does not consider this issue.

The Court also notes that during the hearing on the motions, GEICO argued that to qualify as an insured, Bitonio must be a member of Montero's household as opposed to a member of the "Cabico household."  However, the Policy language states, instead, that a relative living with the insured "in the same household" is considered an insured.  Policy, at 19 (emphasis added).

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant and Counterclaimant Eduardo Bitonio's Motion for Summary Judgment, ECF No. 20, and DENIES Plaintiff Government Employees Insurance Company's Motion for Summary Judgment, ECF No. 21.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 29, 2016.



_____
Alan C. Kay
Sr. United States District Judge

GEICO v. Bitonio, Civ. No. 15-00475 ACK-KJM, Order Granting Defendant and Counterclaimant's Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment